No. 23-10343

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

CARISSA GILMORE,

Plaintiff–Appellant,

v.

GEORGIA DEPARTMENT OF CORRECTIONS, ET AL.,

Defendants–Appellees.

On Appeal from an Order of the United States District Court
for the Southern District of Georgia, Statesboro Division
Case No. 6:18-cv-115, Hon. R. Stan Baker

## EN BANC BRIEF
## OF THE NATIONAL POLICE ACCOUNTABILITY PROJECT
## AND THE CATO INSTITUTE AS AMICI CURIAE

Lauren Bonds
Keisha James
Eliana Machefsky
NATIONAL POLICE
   ACCOUNTABILITY PROJECT
1403 Southwest Blvd.
Kansas City, KS 66103
legal.npap@nlg.org

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

*Counsel for Amici Curiae*

Nov. 18, 2024

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, I certify that the National Police Accountability Project and the Cato Institute are nonprofit organizations. They have no parent corporations, are not affiliated with any publicly owned corporation, and no publicly held corporation holds ten percent of stock in either. Counsel hereby further certifies that the following is a complete list of interested persons:

1. Baker, R. Stan, *District Court Judge*

2. Bonds, Lauren, *Attorney for Amicus NPAP*

3. Boyer, Matthew, *Attorney for Defendants/Appellees*

4. Carr, Christopher M., *Attorney for Defendants/Appellees*

5. Cato Institute, *Amicus Curiae*

6. Chalmers, Roger A., *Attorney for Defendants/Appellees*

7. Chandran, Ashok, *Appellate Attorney for Plaintiff/Appellant*

8. Cusimano, Angela Ellen, *Attorney for Defendants/Appellees*

9. Davy, Jim, *Attorney for Amici NPAP and Cato Institute*

10. Georgia Department of Corrections, *Defendant*

11. Gilmore, Clarissa, *Plaintiff/Appellant*

12. Humphries, Arielle, *Appellate Attorney for Plaintiff/Appellant*

13. Irizarry, Christina M., *Defendant*

14. James, Keisha, *Attorney for Amicus NPAP*

15. Kemmitt, Christopher, *Appellate Attorney for Plaintiff/Appellant*

16. King, Shania, *Attorney for Plaintiff/Appellant*

17. Lupo, Sabrini Carlene, *Defendant*

18. Machefsky, Eliana, *Attorney for Amicus NPAP*

19. Milton, Alberta W., *Defendant*

20. NAACP Legal Defense and Educational Fund, Inc., *Appellate Attorneys for Plaintiff/Appellant*

21. National Police Accountability Project, *Amicus Curiae*

22. Nelson, Janai S., *Appellate Attorney for Plaintiff/Appellant*

23. Pinkston-Pope, Loretta L., *Attorney for Defendants/Appellees*

24. Ray, Christopher L., *Magistrate Judge*

25. Roney, Alexia, *Attorney for Defendants/Appellees*

26. Smith, Tarmarshe A., *Defendant*

27. Spital, Samuel, *Appellate Attorney for Plaintiff/Appellant*

28. The Law Office of Shania King, *Attorneys for Plaintiff/Appellant*

29. Ward, Timothy C., *Georgia Department of Corrections Commissioner*

30. Sheets, Mulik, *Witness*


/s/ Jim Davy

Jim Davy

# TABLE OF CONTENTS

**Page(s)**

Certificate of Interested Parties and Corporate Disclosure
Statement ................................................................................. i

Table of Authorities .................................................................. 1

Interests of the Amici Curiae .................................................. 3

Introduction .............................................................................. 4

Argument ................................................................................... 5

I.   This Court's sister circuits have long applied the robust
     consensus doctrine with little problem. ............................ 5

II.  Treating a robust consensus of persuasive authority as
     clearly established law promotes consistency for civilians,
     government entities, and public officials alike. .............. 10

III. The idea of "fair warning" already incorporates a "legal
     fiction" that transcends the robust consensus doctrine. ......... 12

Conclusion ............................................................................... 14

Certificates .............................................................................. 1a

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amore v. Novarro,*
  624 F.3d 522 (2d Cir. 2010) ................................................................. 11

*Booker v. S.C. Dep't of Corr.,*
  855 F.3d 533 (4th Cir. 2017) ............................................................. 5, 8

*Brosseau v. Haugen,*
  543 U.S. 194 (2004) ............................................................................. 13

*Ciolino v. Gikas,*
  861 F.3d 296 (1st Cir. 2017) .................................................................. 8

*Feminist Majority Found. v. Hurley,*
  911 F.3d 674 (4th Cir. 2018) .................................................................. 6

*Fields v. City of Phila.,*
  862 F.3d 353 (3d Cir. 2017) ................................................................... 7

*Green v. Post,*
  574 F.3d 1294 (10th Cir. 2009) ............................................................. 7

*Hidden Village, LLC v. City of Lakewood,*
  734 F.3d 519 (6th Cir. 2013) .................................................................. 5

*Hogan v. Carter,*
  85 F.3d 1113 (4th Cir. 1996) (en banc) ................................................. 5

*Irish v. Fowler,*
  979 F.3d 65 (1st Cir. 2020) .................................................................... 6

*L.R. ex rel. N.R. v. Sch. Dist. of Phila.,*
  836 F.3d 235 (3d Cir. 2016) ................................................................... 7

*Lawrence v. Reed,*
  406 F.3d 1224 (10th Cir. 2005) ........................................................... 13

*Maldonado v. Fontanes,*
  568 F.3d 263 (1st Cir. 2009) .................................................................. 8

*Martin v. Heckler,*
  773 F.2d 1145 (11th Cir. 1985) ............................................................. 9

*McClendon v. City of Columbia,*
  305 F.3d 314 (5th Cir. 2002) .................................................................. 6

*McCue v. City of Bangor,*
  838 F.3d 55 (1st Cir. 2016) .................................................................... 7

*McKinney v. City of Middletown,*
  49 F.4th 730 (2d Cir. 2022)............................................... 5, 8
*Monell v. Dep't of Soc. Svcs.,*
  436 U.S. 658 (1978) ........................................................... 12
*O'Farrell v. Cnty. of Bernalillo,*
  455 F.Supp.3d 1172 (D.N.M. 2020) ................................... 11
*Pro v. Donatucci,*
  81 F.3d 1283 (3d Cir. 1996) ................................................. 6
*Quaraishi v. St. Charles Cnty.,*
  986 F.3d 831 (8th Cir. 2021)................................................ 5
*Sauers v. Borough of Nesquehoning,*
  905 F.3d 711 (3d Cir. 2018) ................................................ 7
*Turner v. Driver,*
  848 F.3d 678 (5th Cir. 2017).............................................. 6, 7
*Wilson v. Layne,*
  526 U.S. 603 (1999) ............................................................ 3

## Other Authorities

Edward C. Dawson, Qualified Immunity for Officers' Reasonable
  Reliance on Lawyers' Advice, 110 Nw. U. L. Rev. 525 (2016)............. 14
Eliana Fleisher, Comment, *Stating the Obvious: Departmental Policies
  as Clearly Established Law*, 90 U. Chi. L. Rev. 1435 (2023) ........ 12, 13
Stephen Rushin & Atticus DeProspo, *Interrogating Police Officers*, 87
  Geo. Wash. L. Rev. 3 (May 2019) ........................................ 11
William H. Freivogel and Paul Wagman, Wandering cops shuffle
  departments, abusing citizens, Associated Press (Apr. 28, 2021) ...... 11

## INTERESTS OF THE AMICI CURIAE[1]

The National Police Accountability Project was founded in 1999 by members of the National Lawyers Guild to address misconduct by law enforcement officers through coordinating and assisting civil-rights lawyers. NPAP has approximately 550 attorney members practicing in every region of the United States, including nearly thirty in this Circuit. Every year, NPAP members litigate the thousands of egregious cases of law enforcement abuse that do not make news headlines as well as the high-profile cases that capture national attention. NPAP provides training and support for these attorneys and resources for non-profit organizations and community groups working on police and correction officer accountability issues. NPAP appears regularly as amicus curiae in cases presenting issues of particular importance for its members and their clients, including recently in *Gervin v. Florence*, No. 23-11452, and *Brucker v. Doraville*, 21-10122, at this Court.

The Cato Institute is a nonpartisan public-policy research foundation founded in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Project on Criminal Justice, founded in 1999, focuses on the scope of substantive criminal liability, the proper role of police in their communities, the protection of

---

[1] This brief has been authored entirely by *Amici* and their counsel, and no Party or any other person has contributed money to fund the preparation of this brief.

constitutional safeguards for criminal suspects and defendants, citizen participation in the criminal justice system, and accountability for law enforcement.

## INTRODUCTION

As the full Court rehears this case en banc, it should take the opportunity to recognize that "a robust consensus of cases of persuasive authority" can clearly establish law for the purpose of qualified immunity. *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Doing so would correct a longstanding quirk of Circuit precedent; as Judge Rosenbaum observed in her panel concurrence, this Court has for twenty-five years "dodged" direct precedent of the Supreme Court saying that such a robust consensus may clearly establish law for that purpose Slip Op. at 28. *Amici* write separately to answer a practical question articulated by Judge Newsom at the panel stage, and possibly shared by other judges: how the robust consensus standard "would (or should) operate in the real world." Slip Op. at 40. *Amici* discuss "exactly *what* sort of consensus gives officials the requisite notice" in other Circuits, Slip Op. at 40 (cleaned up, emphasis in original), and clarify that in all events, officers do not actually learn about their responsibilities under the law by reading cases—the robust consensus rule, if anything, ensures consistency across jurisdictions that manifests in training officers receive from their government employers.

# ARGUMENT

Judge Newsom and others' concerns about consistency in application are understandable and important. *Amici* would make three points about them. First, federal courts have little trouble applying the robust consensus rule consistently. Indeed, in federal appellate cases applying the rule, the courts of appeals have reached a meta-consensus on what amounts to a robust consensus. Second, applying the robust consensus rule promotes consistency in federal courts' civil rights jurisprudence, because it reduces circumstances in which people in different jurisdictions have different rights in interactions with public officials. Third, to the extent this Court worries about fair warning to officers, applying the Supreme Court's robust consensus rule would not change existing notions of warning, because existing qualified immunity doctrine already incorporates a "legal fiction" about fair warning.

## I. This Court's sister circuits have long applied the robust consensus doctrine with little problem.

As this Court considers guidance it might announce about what amounts to a "robust consensus," it can look to other circuits' cases that have made consistent distinctions about what precedent counts as such. Indeed, precedent reveals a few key consensus characteristics in the composition of a "robust consensus of persuasive authority."

One is that the robust consensus generally requires federal appellate decisions from other circuits as to the right at issue, or less-on-point in-

circuit precedent. District court cases generally do not count. *McKinney v. City of Middletown*, 49 F.4th 730, 740 (2d Cir. 2022) (rejecting an "unpublished case from the Middle District of Pennsylvania" as insufficient to join published law from just one other Circuit); *Hidden Village, LLC v. City of Lakewood*, 734 F.3d 519, 529 (6th Cir. 2013) (rejecting "dictum" from one circuit and "a handful of decisions from district courts" as insufficient to "amount to the robust consensus" required). By contrast, "persuasive" authority can include binding cases from either the Supreme Court or the relevant circuit that are not directly on-point, because they can still put a reasonable officer on notice that particular conduct was unlawful. *Quaraishi v. St. Charles Cnty.*, 986 F.3d 831, 839 (8th Cir. 2021) (citing eleven decisions of the Supreme Court and Eighth Circuit not "directly on point" but persuasive as to the facts at hand). And befitting classic 1L legal writing lessons about hierarchy of authority, published out-of-circuit decisions carry more persuasive weight than unpublished out-of-circuit decisions. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544-45 (4th Cir. 2017) (citing *Hogan v. Carter*, 85 F.3d 1113, 1118 (4th Cir. 1996) (en banc), and discounting unpublished opinions from other circuits).

Another is that existing uniformity matters—a circuit split generally defies "consensus." To be clear, "[a] robust consensus does not require the express agreement of every circuit." *Irish v. Fowler*, 979 F.3d 65, 76 (1st Cir. 2020). But among the circuits that have addressed a question, if

those "federal [appellate] courts are split on the issue, the law cannot be said to be clearly established." *Turner v. Driver*, 848 F.3d 678, 686 (5th Cir. 2017).[2] This might include situations where a small number of circuits seem to agree on a right's existence, but announce meaningfully different standards. *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 705-06 (4th Cir. 2018) (observing that three circuits addressed an issue but "adopted and applied different intent standards," and therefore applying qualified immunity); *see also McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th Cir. 2002) (treating three circuits recognizing a right but differing on the standard as insufficient to make out a robust consensus). Relatedly, a circuit's own prior unpublished precedent can also undermine consensus for qualified immunity purposes. For example, even where six published opinions of other circuits held that the right to videorecord police in public had been clearly established, the Third Circuit held that two prior unpublished decisions to the contrary of its own Court prevented the consensus of published out-of-circuit authority from giving "fair warning so that every reasonable officer knew" that the

---

[2] However, officers in one jurisdiction that has clearly established the law cannot cite a different outlier circuit's law to get qualified immunity, because "[a] circuit split does not foreclose a holding that the law was clearly established, as long as the defendants could not reasonably believe that we would follow the minority approach." *Irish*, 979 F.3d at 78 (citing *Pro v. Donatucci*, 81 F.3d 1283, 1292 (3d Cir. 1996)).

right was clearly established. *Fields v. City of Phila.*, 862 F.3d 353, 362 (3d Cir. 2017).

Finally, among situations where other circuits have reached the same result, courts looking for consensus generally look for at least three such cases. Two, for example, is a "dearth of even persuasive authority" insufficient to place the question "beyond debate" for qualified immunity purposes. *Turner*, 848 F.3d at 687 (citing only decisions of the First and Eleventh Circuits, and applying qualified immunity while establishing the right going forward); *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 721 (3d Cir. 2018) (applying qualified immunity where only "two of our sister circuits" had announced a standard under which the official's alleged conduct would have violated the law, and clearly establishing the right going forward); *see id.* (citing *Green v. Post*, 574 F.3d 1294, 1304 (10th Cir. 2009) as having treated the same two cases as insufficient). Three or four, by contrast, is a robust consensus. *Tuuamelemalo v. Greene*, 946 F.3d 471, 477-78 (9th Cir. 2019) (citing and discussing three uniform decisions of the Sixth, Second, and Fifth Circuits as "a robust consensus among the circuits"); *L.R. ex rel. N.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 249-50 (3d Cir. 2016) (citing four appellate decisions of other circuits as "similar conclusions under analogous circumstances" sufficient to have clearly established the right at issue); *McCue v. City of Bangor*, 838 F.3d 55, 64 (1st Cir. 2016) (treating consensus among four circuits as sufficient to establish the right at issue); *Maldonado v.*

*Fontanes*, 568 F.3d 263, 270-71 (1st Cir. 2009) (holding that a consensus among three circuits could establish the right at issue); *Ciolino v. Gikas*, 861 F.3d 296, 303 (1st Cir. 2017) (calling three cases "a robust consensus of cases of persuasive authority"); *McKinney*, 49 F.4th at 753 (Calabresi, J., dissenting) (disagreeing with the majority as to whether four cases were on-point, because four such cases would amount to a consensus).

While this Court will announce a rule that affects cases with different established on-point law, here, the question of consensus, or of that consensus's robustness, is not close. The Fourth Circuit has explained that "unanimity among" ten of thirteen courts of appeals is not only a robust consensus, but an "overwhelming consensus" as to a right at issue. *Booker*, 855 F.3d at 544-45. As Appellant has explained—and as the panel recognized, Slip Op. at 29—there is a uniform consensus as to the right at issue among seven courts of appeals. *Amici* agree with Appellant that this case is also an "obvious" one that could have been resolved without any on-point cases. But to the extent that this Court believes it is not such a case, the robust consensus issue is outcome determinative. The robust consensus standard from *Wilson* and *al-Kidd*, as applied by every other Circuit, would treat seven unanimous published opinions from other circuits predating the conduct at issue as clearly establishing the law and deny qualified immunity to the government defendant. This Court should apply that standard and do the same.

## II. Treating a robust consensus of persuasive authority as clearly established law promotes consistency for civilians, government entities, and public officials alike.

Treating a "robust consensus" of cases from other circuits as sufficient to establish a right also serves important interests identified by this Court. The Court has previously explained the importance of "desirable predictability of law and equal application throughout the country," and pointed to the benefits of "maintain[ing] uniformity with principled decisions." *Martin v. Heckler*, 773 F.2d 1145, 1153 (11th Cir. 1985). These observations highlight the usefulness of the robust consensus rule, because the rule promotes consistent application of constitutional rights, to the benefit of both civilians and public officials.

As it stands, one of the many problems with qualified immunity is that "what is clearly established—and therefore what rights are actually enforceable—varies from place to place." Marie Miller et al., Constitutional GPA, Institute For Justice.[3] Both civilians and police officers regularly move across state lines, including from (for example) Baton Rouge, LA to Tuscaloosa, AL,[4] or Gainesville, FL to Columbia, SC.[5] Clearly established law already changes upon such moves; this Circuit's

---

[3] *Available at*: https://ij.org/report/constitutional-gpa/.

[4] *See, e.g.*, Nick Saban, Wikipedia (last accessed Nov. 9, 2024), *available at*: https://en.wikipedia.org/wiki/Nick_Saban.

[5] *See, e.g.*, Steve Spurrier, Wikipedia (last accessed Nov. 9, 2024), *available at*: https://en.wikipedia.org/wiki/Steve_Spurrier.

rejection of the "robust consensus" doctrine only amplifies that. The characteristics of officers who shift departments only underscores the problem—internal investigations and department discipline encourages officers who engage in misconduct to switch departments and states. *See* Stephen Rushin & Atticus DeProspo, *Interrogating Police Officers*, 87 GEO. WASH. L. REV. 3 (May 2019) (discussing state laws and collective bargaining agreements).[6] And indeed, dismissed officers who move departments are also those more likely to violate someone's constitutional rights. *See* William H. Freivogel and Paul Wagman, *Wandering cops shuffle departments, abusing citizens*, ASSOCIATED PRESS (Apr. 28, 2021) (noting that officers hired after prior dismissals "are subsequently fired and subjected to 'moral character' complaints at elevated rates relative to both officers hired as rookies and veterans with clean professional histories.").[7] Civilians, officers, and departments trying to hire well and consistently enforce laws would all benefit from laws that shift less as people cross state lines.

---

[6] *Available at*: https://www.gwlr.org/wp-content/uploads/2019/06/87-Geo.-Wash.-L.-Rev.-646.pdf

[7] *Available at*: https://apnews.com/article/michael-brown-business-police-reform-death-of-george-floyd-bfd018e3c12413f840482efca29ca6ba

### III. The idea of "fair warning" already incorporates a "legal fiction" that transcends the robust consensus doctrine.

Judge Newsom's concerns about fair warning are well-taken, but in *Amici*'s experience, applying the robust consensus rule makes no difference from not applying it when it comes to warning individual officers about their responsibilities. The entire idea of fair warning through case law only illustrates a foundational problem of qualified immunity jurisprudence. Considering possible unfairness of expecting officers to know or follow clearly established law in out-of-circuit opinions in § 1983 cases implies that it *is* fair to expect them to know or follow clearly established law from in-circuit opinions in § 1983 cases. But "the statement in *Harlow* that reasonably competent public officials know clearly established law [] is a legal fiction." *Amore v. Novarro*, 624 F.3d 522, 535 (2d Cir. 2010) (alteration in original). Officers simply do not read new opinions from *any* circuit. "It is hard enough for the federal judiciary to embark on such an exercise, let alone likely that police officers are endeavoring to parse opinions." *O'Farrell v. Cnty. of Bernalillo*, 455 F.Supp.3d 1172, 1206 n.29 (D.N.M. 2020). Despite this, qualified immunity "is designed to protect only officers who could not have known that their conduct violated case law, while assuming those officers actually are informed about that case law." Eliana Fleisher, Comment, *Stating the Obvious: Departmental Policies as Clearly Established Law*, 90 U. Chi. L. Rev. 1435, 1453 (2023).

In the real world, it would make far more sense to hold officers responsible for following their training, rather than for fact patterns from opinions. Officers learn about their responsibilities not through the Federal Reporter, but through department training and policies. Indeed, qualified immunity jurisprudence that protects officers who ignore their training merely because of an absence of on-point precedent sits in some tension with other doctrines. For example, the law allows plaintiffs to hold officers' employers responsible for intentional violations committed by those officers in the absence of such training, or for allowing an unconstitutional policy or practice to persist. *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978). Yet those same policies do not clearly establish law for officers, while a "reasonable officer is assumed to have encyclopedic knowledge of all their circuit's qualified immunity case law," with no basis to expect that. *Stating the Obvious*, 90 U. Chi. L. Rev. at 1453.

This Court should harmonize its precedent with the Supreme Court by applying the robust consensus rule without concern for fair notice because in practice, there is no fair notice difference between in-circuit precedent and a robust consensus of out-of-circuit precedent. Such a distinction would matter only for officers who obsessively read their own jurisdiction's new cases, and not others—a solely theoretical category. If anything, the more robust the consensus, the more egregious the legal fiction becomes because of how officers do get information about case law. Officers generally get legal updates from police department attorneys

and leadership. *See, e.g. Lawrence v. Reed*, 406 F.3d 1224, 1237 (10th Cir. 2005) (Hartz, J., dissenting) (discussing role of advice of counsel in qualified immunity analysis). Courts may fairly expect those attorneys to keep reasonably abreast of notable published civil rights cases in other circuits. *See* Edward C. Dawson, Qualified Immunity for Officers' Reasonable Reliance on Lawyers' Advice, 110 Nw. U. L. REV. 525, 542–43 (2016). And those attorneys should both notice and recognize the importance of a robust consensus across circuits. Circumstances like those here, where so many circuits have uniform, on-point, clearly established law, provides far more fair notice to the people who write and conduct officer trainings than one in-circuit decision with different facts, or general principles from a Supreme Court case that might apply with obvious clarity—either of which defeats qualified immunity. *See, e.g.*, *Brosseau v. Haugen*, 543 U.S. 194, 203 (2004).

## CONCLUSION

The en banc Court should harmonize its precedent with the Supreme Court by holding that robust consensus of cases of persuasive authority may clearly establish the law for purposes of qualified immunity, and it should apply that rule here to deny qualified immunity based on a robust consensus of cases treating the conduct here as a constitutional violation.

Respectfully submitted,

                              <u>/s/ Jim Davy</u>

Lauren Bonds                    Jim Davy
Keisha James                   ALL RISE TRIAL & APPELLATE
Eliana Machefsky             P.O. Box 15216
NATIONAL POLICE           Philadelphia, PA 19125
   ACCOUNTABILITY PROJECT  (215) 792-3579
1403 Southwest Blvd.         jimdavy@allriselaw.org
Kansas City, KS 66103
legal.npap@nlg.org

*Counsel for Amici Curiae*

Nov. 18, 2024

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g), I certify that this brief:

(i) complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 2,765 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 16.88, set in Century Schoolbook 14-point type.

/s/ Jim Davy

Jim Davy

**CERTIFICATE OF SERVICE**

I certify that on Nov. 18, 2024, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

<u>/s/ Jim Davy</u>

Jim Davy