No. 23-10343

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

CLARISSA GILMORE,

Plaintiff-Appellant, vs.

GEORGIA DEPARTMENT OF CORRECTIONS, et al.

Defendants-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA, STATESBORO
DIVISION No. 6:18-cv-00115-RSB-CLR

---

**EN BANC REPLY BRIEF OF PLAINTIFF-APPELLANT**

---

Janai S. Nelson
*President & Director-Counsel*
Samuel Spital
Arielle Humphries
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor New York,
NY 10006
T: (212) 965-2200
F: (212) 226-7529

Christopher E. Kemmitt*
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
T: (202) 682-1300
F: (202) 682-1312

Shania King
The Law Office of Shania King,
LLC 1075 Peachtree St.
Atlanta, GA 30039

*Counsel for Plaintiff-Appellant*
*\*Counsel of Record*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the NAACP Legal Defense and Educational Fund, Inc., and The Law Office of Shania King, LLC, state that they have no parent corporations, nor have they issued shares or debt securities to the public. These organizations are not subsidiaries of or affiliated with any publicly owned corporation, and no publicly held corporation holds ten percent of their stock. Counsel hereby certifies that the following is a complete list of interested persons:

1. Baker, R. Stan, District Court Judge

2. Boyer, Matthew, Attorney for Defendants/Appellees

3. Carr, Christopher M., Attorney for Defendants/Appellees

4. Chalmers, Roger A., Attorney for Defendants/Appellees

5. Cusimano, Angela Ellen, Attorney for Defendants/Appellees

6. Georgia Department of Corrections, Defendant

7. Gilmore, Clarissa, Plaintiff/Appellant

8. Humphries, Arielle, Appellate Attorney for Plaintiff/Appellant

9. Irizarry, Christina M., Defendant

10. Kemmitt, Christopher, Appellate Attorney for Plaintiff/Appellant

11. King, Shania, Attorney for Plaintiff/Appellant

12. Lupo, Sabrina Carlene, Defendant

13. Milton, Alberta W., Defendant

14. NAACP Legal Defense and Educational Fund, Inc., Appellate Attorneys for Plaintiff/Appellant

15. Nelson, Janai S., Appellate Attorney for Plaintiff/Appellant

16. Petrany, Stephen J., Attorney for Defendants/Appellees

17. Pinkston-Pope, Loretta L., Attorney for Defendants/Appellees

18. Ray, Christopher L., Magistrate Judge

19. Roney, Alexia, Attorney for Defendants/Appellees

20. Smith, Tarmarshe A., Defendant

21. Spital, Samuel, Appellate Attorney for Plaintiff/Appellant

22. The Law Office of Shania King, Attorneys for Plaintiff/Appellant

23. Ward, Timothy C., Georgia Department of Corrections Commissioner

24. Sheets, Mulik, Witness

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES........................................................................ iii

INTRODUCTION ...............................................................................1

ARGUMENT ...................................................................................2

I.  THIS COURT MUST APPLY THE SUPREME COURT'S HOLDINGS THAT
    A ROBUST CONSENSUS OF CASES OF PERSUASIVE AUTHORITY CAN
    CLEARLY ESTABLISH THE LAW. .................................................2

    A. Precedent from the Supreme Court Is Binding on Lower Federal Courts. ....2

    B. The Supreme Court's Repeated Statements That a Robust Consensus of
       Cases of Persuasive Authority Can Clearly Establish the Law Represent
       Holdings.....................................................................3

II. EVEN IF THE SUPREME COURT'S ROBUST-CONSENSUS LANGUAGE
    IS DICTA, IT IS AUTHORITATIVE. .............................................11

III.THE ROBUST-CONSENSUS STANDARD SERVES THE POLICIES
    UNDERLYING QUALIFIED IMMUNITY AND IS EASILY
    ADMINISTRABLE.............................................................13

    A. Qualified Immunity Balances Protection for Officials Against the Need to
       Vindicate Civil Rights and Curb Official Misconduct. ...............................14

    B. Appellees Misunderstand the Relationship Between Circuits. ....................16

    C. Appellees' "Workability" Concerns Ignore the Supreme Court's Rejection
       of Categorical Rules About Qualified Immunity..........................................18

IV. A ROBUST CONSENSUS OF PERSUASIVE AUTHORITY CLEARLY
    ESTABLISHES THAT APPELLEES VIOLATED MS. GILMORE'S FOURTH
    AMENDMENT RIGHTS. .....................................................21

i

A. Nine Unanimous Court Decisions Holding That Reasonable Suspicion Is Required to Conduct a Strip Search Create a Robust Consensus of Persuasive Authority. ....................................................................................21

B. The Robust Consensus Was Not Unsettled by *Powell* or *Florence*. ............24

C. Appellees Had Fair Notice That Their Behavior Was Unlawful..................26

CONCLUSION ........................................................................................26

CERTIFICATE OF COMPLIANCE ....................................................28

CERTIFICATE OF SERVICE ..............................................................28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACLU of Ky. v. McCreary Cnty.*,
  607 F.3d 439 (6th Cir. 2010) ...........................................................11

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011)..............................................................1, 3, 6, 8

*Blackburn v. Snow*,
  771 F.2d 556 (1st Cir. 1985)...............................................................26

*Bravo v. United States*,
  532 F.3d 1154 (11th Cir. 2008) ...........................................................6

*Brousseau v. Haugen*,
  543 U.S. 194 (2004).............................................................................13

*Brown v. Giles*,
  95 F.4th 436 (6th Cir. 2024) ................................................................8

*Burgess v. Lowery*,
  201 F.3d 942 (7th Cir. 2000) (Posner, C.J.) ................................18, 24

*Calhoun v. Warden, Baldwin State Prison*,
  92 F.4th 1338 (11th Cir. 2024), *cert. denied*, No. 24-323, 2024 WL
  4654999 (U.S. Nov. 4, 2024)................................................................8

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986).............................................................................15

*Crawford-El v. Britton*,
  523 U.S. 574 (1998).............................................................................15

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018)..................................... 2, 6, 7, 8, 9, 10, 12, 16, 18

iii

*Elder v. Holloway*,
    510 U.S. 510 (1994)...........................................................................10, 14, 15, 16

*Ermold v. Davis*,
    936 F.3d 429 (6th Cir. 2019) ...............................................................18

*Florence v. Bd. Chosen Freeholder of Cnty. of Burlington*,
    566 U.S. 318 (2012)........................................................................24, 25

*Gilmore v. Ga. Dep't of Corr.*,
    111 F. 4th 1118 (11th Cir 2024) (Newsom, J., concurring) .......................21, 26

*Gilmore v. Milton*,
    No. 6:18-cv-115, 2020 WL 7249627 (S.D. Ga. Dec. 9, 2020)...........................15

*Hope v. Pelzer*,
    536 U.S. 730 (2002)..............................................................................18

*Hutto v. Davis*,
    454 U.S. 370 (1982) (per curiam)..............................................................2

*Int'l Truck & Engine Corp. v. Bray*,
    372 F.3d 717 (5th Cir. 2004) ...................................................................3

*Laskar v. Hurd*,
    972 F.3d 1278 (11th Cir. 2020) .........................................................17, 19

*Martin v. Heckler*,
    773 F.2d 1145 (11th Cir. 1985) ...............................................................17

*Mayfield v. Fields*,
    85 F.3d 641 (10th Cir. 1996) ..................................................................23

*McCoy v. Mass. Inst. of Tech.*,
    950 F.2d 13 (1st Cir. 1991)................................................................11, 12

*McCullogh v. Antolini*,
    559 F.3d 1201 (11th Cir. 2009) ...............................................................18

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)........................................................................13

*Muscogee (Creek) Nation v. Rollin*,
    119 F.4th 881 (11th Cir. 2024) ....................................................11

*Pearson v. Callahan*,
    555 U.S. 223 (2009)........................................................................14

*Peterson v. BMI Refractories*,
    124 F.3d 1386 (11th Cir. 1997) ....................................................11

*Plumhoff v. Rickard*,
    572 U.S. 765 (2014).....................................................................3, 6

*Powell v. Barrett*,
    541 F.3d 1298 (11th Cir. 2009) ....................................................24

*Prison Legal News v. Sec'y, Fla. Dep't of Corr.*,
    890 F.3d 954 (11th Cir. 2018) ......................................................10

*Ramos v. Louisiana*,
    590 U.S. 83 (2020)...........................................................................2

*Roe v. Michelin N. Am., Inc.*,
    613 F.3d 1058 (11th Cir. 2010) ....................................................16

*Romo v. Champion*,
    46 F.3d 1013 (10th Cir. 1995) .................................................22, 23

*Schwab v. Crosby*,
    451 F.3d 1308 (11th Cir. 2006) ....................................................11

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996)......................................................................4, 12

*State v. Martinez*,
    580 P.2d 1282 (Haw. 1978) ......................................................23, 24

v

*Strickland v. Washington*,
    466 U.S. 668 (1984)........................................................................8

*Thorne v. Jones*,
    765 F.2d 1270 (5th Cir. 1985) ....................................................26

*Ullery v. Bradley*,
    949 F.3d 1282 (10th Cir. 2020) ..................................................15

*United States v. Caraballo-Martinez*,
    866 F.3d 1233 (11th Cir. 2017) ....................................................3

*United States v. City of Hialeah*,
    140 F.3d 968 (11th Cir. 1998) ....................................................12

*United States v. Files*,
    63 F.4th 920 (11th Cir. 2023) .............................................3, 4, 5

*United States v. Goodheim*,
    651 F.2d 1294 (9th Cir. 1981), *abrogated on other grounds*, *Parke
    v. Raley*, 506 U.S. 20 (1992)......................................................17

*United States v. Hill*,
    99 F.4th 1289 (11th Cir. 2024) ..................................................15

*United States v. Johnson*,
    921 F.3d 991 (11th Cir. 2019) (en banc) .....................................3

*United States v. Lanier*,
    33 F.3d 639 (6th Cir. 1994) ........................................................19

*United States v. Lanier*,
    520 U.S. 259 (1997)..............................................10, 13, 16, 19, 20

*United States v. Lanier*,
    73 F.3d 1380 (6th Cir. 1996) ......................................................19

*United States v. Touset*,
    890 F.3d 1227 (11th Cir. 2018) ..................................................25

vi

*Varrone v. Bilotti*,
    123 F.3d 75 (2d Cir. 1997) ...................................................................22, 23, 26

*Waldrop v. Evans*,
    871 F.2d 1030 (11th Cir. 1989) ...........................................................14

*Wilson v. Layne*,
    526 U.S. 603 (1999)...........................................................................3, 4, 5, 6

*Woodford. v. Visciotti*,
    537 U.S. 19 (2002)...........................................................................8

*Wynne v. Town of Great Falls*,
    376 F.3d 292 (4th Cir. 2004) .............................................................11

## Other Authorities

Bryan A. Garner et al., *The Law of Judicial Precedent* § 4 (2016).........................11

## **INTRODUCTION**

This case involves precisely the kind of precedent that requires adherence from lower courts. To properly balance the interests underlying a legal doctrine—qualified immunity—that the Supreme Court itself created, the Court crafted the following legal rule: "a robust 'consensus of cases of persuasive authority'" can "clearly establish" the law to defeat qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). The Court has applied this rule in a manner necessary to the result in four separate cases. And those rulings each constitute holdings that this Court has an unflinching obligation to follow. At a minimum, they are dicta due significant deference from this Court.

Appellees disagree. They contend that the Supreme Court's 25-year-old legal standard is not just dicta, but "negative pregnant, devoid-of-analysis, throw-away kind of dicta," that warrants no "special weight." Appellees' Brief ("Br.") at 44. But decades of Supreme Court precedent say otherwise. Thus, this Court is not at liberty to conduct a de novo balancing of the policies underlying the qualified immunity doctrine. That decision is for the Supreme Court, which has already struck a careful and reasoned balance to ensure that state officials have fair warning of what the Constitution requires. Appellees also suggest that the Supreme Court's test is "unworkable"; however, this suggestion is unpersuasive, as even Appellees concede

that every other circuit court in the country has been using that test, without issue, for decades.

This Court should adopt the robust consensus standard, reverse the District Court, and deny Appellees qualified immunity here. Nine unanimous circuit opinions, this Court's Fourth Amendment decisions in analogous contexts, and Appellees' own internal regulations provided sufficient warning that no "reasonable officer, looking at the entire legal landscape at the time of [Appellees' conduct], could have interpreted the law as permitting the [manual body cavity search] here." *District of Columbia v. Wesby*, 583 U.S. 48, 68 (2018).

## ARGUMENT

**I.    THIS COURT MUST APPLY THE SUPREME COURT'S HOLDINGS THAT A ROBUST CONSENSUS OF CASES OF PERSUASIVE AUTHORITY CAN CLEARLY ESTABLISH THE LAW.**

### A.    Precedent from the Supreme Court Is Binding on Lower Federal Courts.

"[V]ertical stare decisis is absolute …." *Ramos v. Louisiana*, 590 U.S. 83, 124 n.5 (2020). That is because, as the Supreme Court has explained, "unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts…." *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam). Put differently, "when a precedent of the Supreme Court has direct

application, [this Court] must follow it." *United States v. Johnson*, 921 F.3d 991, 1001 (11th Cir. 2019) (en banc) (cleaned up).

**B.    The Supreme Court's Repeated Statements That a Robust Consensus of Cases of Persuasive Authority Can Clearly Establish the Law Represent Holdings.**

The portions of *Wilson*, *Ashcroft*, *Plumhoff v. Rickard*, 572 U.S. 765 (2014), and *Wesby* in which the Supreme Court states that a robust consensus of cases of persuasive authority can clearly establish the law all constitute holdings.

The holding of a case "comprises both 'the result of the case and those portions of the opinion necessary to the result.'" *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1244 (11th Cir. 2017) (citation omitted). And, in this context, the term "necessary" is elastic. This Court's "own precedent and common sense both reveal that 'necessary' doesn't mean *strictly* necessary." *United States v. Files*, 63 F.4th 920, 927 (11th Cir. 2023) (emphasis in original). For instance, "statements of a legal rule" that may be "technically unnecessary to a case's resolution" constitute holdings. *Id.* at 928; *see also Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004) ("A statement is not dictum if it is necessary to the result or constitutes an explication of the governing rules of law."). Applying these principles, in *Files*, the Court explained that "statements" from a prior opinion that "were clearly significant to [the Court's] conclusion" were "fundamentally similar to the other sorts of determinations that [this Court has] traditionally

accorded holding status," and therefore constituted holdings rather than dicta. 63 F.4th at 930.

The Supreme Court's robust-consensus discussion in *Wilson* constitutes a holding both because it is necessary to the Court's decision and because the Court articulated it as part of the governing legal rule.

*Wilson* presented two legal questions: (1) whether police violated the Fourth Amendment by bringing third parties into a home during the execution of a warrant, 526 U.S. at 614, and (2) whether petitioners' Fourth Amendment right was clearly established at the time of the search. *See id.* The Court answered the first question in the affirmative, and the second in the negative: "We hold that such a 'media ride-along' does violate the Fourth Amendment, but that because the state of the law was not clearly established at the time the search in this case took place, the officers are entitled to the defense of qualified immunity." *Id.* at 605-06.

To explain why petitioners' right was not clearly established, the Court made two points, both of which represented "portions of the opinion necessary to th[e] result." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996). It concluded, first, that the Fourth Amendment question was not "open and shut" because it was not obvious from general legal principles, and second, that the extant case law was too spare to clearly establish the law. *Wilson*, 526 U.S. at 615-17. To address the latter issue, the Court needed to explain why a Sixth Circuit decision that preceded the

4

search in question and "anticipate[d] today's holding that police may not bring along third parties during an entry into a private home pursuant to a warrant," *id.*, did not clearly establish the law.

The Court's answer was that the clearly-established-law standard required either a controlling case from the same jurisdiction or a consensus of cases of persuasive authority from elsewhere:

> Petitioners have not brought to our attention any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, nor have they identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.

*Id.* at 617. Consequently, the Court sided with the respondent officers because it viewed "the state of the law as to third parties accompanying police on home entries [as] at best undeveloped…." *Id.* In other words, the Court recognized that a "consensus of cases of persuasive authority" could satisfy the clearly-established-law standard but determined that the petitioners did not satisfy that standard by pointing to just a single out-of-circuit decision. The Court's analysis thus makes clear that the "consensus of cases of persuasive authority" language was necessary to the result or, at a minimum, "clearly significant to its … conclusion" that respondents did not violate petitioners' clearly-established rights. *See Files*, 63 F.4th at 930.

*Wilson*'s robust-consensus language also constitutes a holding because it was a "statement[] of a legal rule." *Id. Wilson* announced what plaintiffs needed to adduce

to prove that a legal proposition was clearly established: "any cases of controlling authority in their jurisdiction" *or* "a consensus of cases of persuasive authority," 526 U.S. at 617—the same legal standard for which subsequent Supreme Court cases have cited *Wilson*. *See, e.g.*, *Wesby*, 583 U.S. at 63.

The Supreme Court's robust-consensus discussions in *Ashcroft* and *Plumhoff* also constitute holdings because the Supreme Court cited the robust-consensus requirement as part of the governing legal standard, and then applied that standard to resolve plaintiffs' claims in both cases.[1] In *Ashcroft*, the Court held that plaintiff failed to satisfy the clearly-established-law standard because he presented the Court with nothing beyond dicta from a single district court decision, which "falls far short of what is necessary absent controlling authority: a robust 'consensus of cases of persuasive authority.'" 563 U.S. at 741-42 (quoting *Wilson*, 526 U.S. at 617). And in *Plumhoff*, the Court held that "[t]o defeat immunity here," a plaintiff must show "either controlling authority or a  robust consensus of cases of persuasive authority." 572 U.S. at 780 (cleaned up). Because the respondent did "not point[] [the Court] to any case—let alone a controlling case or a robust consensus of cases," the Court held that petitioners "violated no clearly established law." *Id.* at 780-01.

---

[1] In both *Ashcroft* and *Plumhoff*, the Court first determined that defendants did not violate the Fourth Amendment. *See Ashcroft,* 563 U.S. at 740; *Plumhoff*, 572 U.S. at 777. But its clearly-established-law determinations are alternative holdings, which "are as binding as solitary holdings." *Bravo v. United States*, 532 F.3d 1154, 1162–63 (11th Cir. 2008).

6

The Court did the same thing in *Wesby*. After determining that defendants did not violate plaintiffs' Fourth Amendment rights, the Court expressly chose to address the clearly-established prong of qualified immunity to demonstrate how lower courts should apply the rule to avoid "undermin[ing] the values qualified immunity seeks to promote." *Wesby*, 583 U.S. at 62 (citation omitted). It explained that "[t]o be clearly established, a legal principle must … be… dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 63 (cleaned up). The Court proceeded to apply that standard, stating that "neither the panel majority nor the [plaintiffs] have identified a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation 'under similar circumstances.'" *Id.* at 65. Then, expressly relying on plaintiffs' failure to satisfy that standard, the Court ruled that "[t]he [defendant] officers were thus entitled to qualified immunity." *Id.* And, in the very next sentence, the Court criticized the panel opinion below for failing to "follow this straightforward analysis." *Id.* "[T]his straightforward analysis," which includes the robust-consensus discussion, represents the holding of *Wesby*, and binds this Court here.

Appellees' contrary assertion that the robust-consensus standard "has always been dicta," Br. at 41, lacks merit. It does not matter that "the Court did not apply

the standard to find the law was clearly established."[2] *Id.*at 42. The Supreme Court *did* apply the robust-consensus standard, and the Court's application of the standard was necessary to its ultimate determination that defendants had not violated plaintiffs' clearly established rights. There is no legal requirement that analysis and application of a legal standard can only constitute a holding when a court determines that a party has satisfied the standard in that case. For example, *Strickland v. Washington*, 466 U.S. 668 (1984), stated that to prove prejudice for an ineffective assistance claim, a defendant must establish a reasonable probability of a different result. The Court then applied that standard but not in Mr. Strickland's favor: it ruled that he "suffered insufficient prejudice" to warrant relief. *See id.* at 698-99. Nonetheless, both this Court and the Supreme Court have held that the "general standards for judging ineffectiveness claims" that *Strickland* "articulated" and "appl[ied]," *see id.* at 698, including the reasonable probability standard, constitute holdings. *See, e.g.*, *Woodford. v. Visciotti*, 537 U.S. 19, 22 (2002) (describing reasonable probability standard as holding); *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024), *cert. denied*, No. 24-323, 2024 WL

---

[2] Appellees cite footnoted dicta from a single Sixth Circuit judge for the proposition that the Supreme Court has merely "suggested" that the robust-consensus standard "might exist in theory." Br. at 43, citing *Brown v. Giles*, 95 F.4th 436, 439 n.1 (6th Cir. 2024). This statement is belied by the text of *Ashcroft* and *Wesby*, which unequivocally state that a robust consensus can clearly establish the law, *see Ashcroft*, 563 U.S. at 741-42; *Wesby*, 583 U.S. at 63. And it was rejected by the two other members of the *Brown* panel, who wrote separately to affirm that a robust consensus clearly establishes the law. *See Brown*, 95 F.4th at 441-42 (Gibbons, J., concurring in judgment) (citing *Wesby* for that proposition); *id.* at 442 (White, J., dissenting) (same).

4654999 (U.S. Nov. 4, 2024) (same). This is so because court opinions do more than judge which party wins under the particular facts of a case: they articulate the legal rules that are necessary to understand why the winning party prevailed.

Next, Appellees contend that this Court cannot be bound by *Wilson*, *Ashcroft*, or *Plumhoff* because the Supreme Court's more recent decisions in *Sheehan* and *Barkes* have "poured cold water on the 'robust consensus' idea," Br. at 42-43, and because *Wesby* has further "retreated from it." *Id.* at 44. These arguments misread the relevant Supreme Court decisions and misunderstand this Court's obligation to vertical precedent.

*First*, the "cold water" referenced by Appellees is three equivocal words— "to the extent"—inserted before the robust-consensus standard in *Sheehan* and *Barkes*. As demonstrated in *Wesby*, the Supreme Court knows very well how to signal that it has not decided an issue. *See* 583 U.S. at 66 n.8 ("We have not decided yet what precedents—other than our own—qualify as controlling authority."). That is not what the Court said in dicta in *Sheehan* and *Barkes*. Instead, the Court used the phrase "to the extent," which neither confirms nor denies that the Court has decided the issue.

*Second*, *Wesby*, which post-dates *Sheehan* and *Barkes*, demonstrates that the Supreme Court has not retreated from the robust-consensus standard. *See supra* at 7; *Wesby*, 583 U.S. at 63-65. Appellees claim otherwise, citing *Wesby*'s statement

9

that "[w]e have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity." 583 U.S. at 66 n.8; *see* Br. at 45. But Appellees overread this sentence. *Wesby* makes clear that two separate categories of cases can clearly establish the law: (1) "controlling authority," and (2) "a robust consensus of cases of persuasive authority." 583 U.S. at 63 (cleaned up). The *Wesby* statement cited by Appellees speaks only to the former category, "controlling authority." The Court's statement says nothing at all about the robust-consensus standard; it merely observes that the Court has not yet had occasion to define the full set of cases comprising the "controlling authority" category, just as it has not yet had occasion to define the contours of the "robust consensus" category. Furthermore, though it is true that the Court has not directly addressed the question of what decisions may qualify as controlling authority, its decisions in *United States v. Lanier*, 520 U.S. 259, 269-71 (1997), and *Elder v. Holloway*, 510 U.S. 510, 515 (1994), both strongly suggest that circuit authority qualifies, as does the Supreme Court's four-decade practice of consulting circuit authority in qualified immunity cases, *see infra* at 12-13, 15-16, 19-20.

*Third*, even if *Sheehan* and *Barkes* had raised the possibility that the Supreme Court might someday retreat from the robust consensus standard despite *Wesby*'s unqualified reliance on it, this Court's "duty is to follow Supreme Court decisions, not to use them to map trends and plot trajectories." *Prison Legal News v. Sec'y, Fla.*

*Dep't of Corr.*, 890 F.3d 954, 966 (11th Cir. 2018). "The Supreme Court has explained that inferior courts must follow its precedent that has 'direct application in a case' even if it 'appears to rest on reasons rejected in some other line of decisions.'" *Muscogee (Creek) Nation v. Rollin*, 119 F.4th 881, 889 (11th Cir. 2024) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).

## II. EVEN IF THE SUPREME COURT'S ROBUST-CONSENSUS LANGUAGE IS DICTA, IT IS AUTHORITATIVE.

"All federal courts place significant weight on the dicta of the U.S. Supreme Court." Bryan A. Garner et al., *The Law of Judicial Precedent* § 4, at 70 (2016). As this Court has observed, "there is dicta, and then there is Supreme Court dicta." *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006). And "dicta from the Supreme Court is not something to be lightly cast aside." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997). Indeed, many of this Court's sister circuits treat considered Supreme Court dicta as generally authoritative. *See, e.g.*, *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991); *Wynne v. Town of Great Falls*, 376 F.3d 292, 298 n.3 (4th Cir. 2004); *ACLU of Ky. v. McCreary Cnty.*, 607 F.3d 439, 447 (6th Cir. 2010).

For several reasons, the Supreme Court's discussion of the robust-consensus standard requires particularly heightened deference here.

*First*, as discussed above, the robust-consensus standard represents a governing rule. *See Seminole Tribe of Fla.*, 517 U.S. at 66-67. Even if it were not a holding, it would still warrant significant deference as a legal rule that *Wesby* cited and applied during a discussion that was expressly intended to demonstrate proper application of the clearly-established-law test. 583 U.S. at 62-65.

*Second*, the Supreme Court's robust-consensus discussions came in the context of the Court interpreting the qualified immunity doctrine and the clearly-established-law test, both of which the Court itself created. Just as this Court has recognized that Supreme Court dicta is especially persuasive where "it interprets the [Supreme] Court's own precedent," *United States v. City of Hialeah*, 140 F.3d 968, 974 (11th Cir. 1998), it should be especially persuasive when the Court is explaining the requirements of its own legal doctrine and test.

*Third*, the robust-consensus standard is well-worn. It has existed for a quarter century, has been cited several times, was endorsed as recently as 2017, and has not been undermined following *Wesby*. *See McCoy*, 950 F.2d at 19 (Supreme Court dicta that "is of recent vintage and not enfeebled by any subsequent statement" is particularly authoritative).

*Fourth*, the Supreme Court has long indicated that legal authority from other circuits is relevant to qualified immunity determinations. The Supreme Court consulted non-controlling circuit authority fourteen years before its *Wilson* decision

12

in *Mitchell v. Forsyth*, 472 U.S. 511, 534 (1985), and has repeatedly done so since then, even in cases that do not name the robust-consensus standard. *See, e.g.*, *Brousseau v. Haugen*, 543 U.S. 194, 200-01 (2004). Moreover, the Supreme Court determined two years before *Wilson* that circuit authority from across the country could provide fair notice to defendants in criminal cases because it did so in qualified immunity cases, and "the qualified immunity test is simply the adaptation of the [criminal] fair warning standard…." *Lanier*, 520 U.S. at 269-71. Thus, the broader landscape of Supreme Court decisions further demonstrates its commitment to the principles undergirding the robust-consensus standard.

*Fifth*, the robust-consensus standard has garnered overwhelming support from the justices on the Supreme Court. *Wilson*, *Plumhoff*, and *Wesby* were all unanimous or near-unanimous decisions, and no justice has ever criticized the robust-consensus standard in concurrence or dissent.

In sum, this Court should follow the Supreme Court's longstanding rule— whether holding or dicta—that a robust consensus of cases of persuasive authority can clearly establish the law.

## III.   THE ROBUST-CONSENSUS STANDARD SERVES THE POLICIES UNDERLYING QUALIFIED IMMUNITY AND IS EASILY ADMINISTRABLE.

Appellees' arguments also fail on their own terms. Appellees' arguments against the robust-consensus standard are premised on their suggestion that the

13

purpose of qualified immunity is to protect public officials. But qualified immunity jurisprudence reflects a *balance* that also respects the need to vindicate civil rights and deter official misconduct. As part of that balance, other circuits' definitions of rights cannot merely be ignored; this Court can and should consider persuasive authority, as it does in any other litigation, as evidence that relevant legal principles support one reasonable result.

### A.     Qualified Immunity Balances Protection for Officials Against the Need to Vindicate Civil Rights and Curb Official Misconduct.

Appellees disparage the robust consensus standard as inconsistent with what they posit to be the overarching goal of qualified immunity: simple and easily administrable rules to protect public officials. Br. at 21. But their premise is flawed: the Supreme Court has made clear that qualified immunity "balances two important interests." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). One is to protect officials from liability for reasonable mistakes. But the other equally important interest is "the need to hold public officials accountable when they exercise power irresponsibly …." *Id*. The Supreme Court has carefully protected this balance, weighing how broader immunities would affect the important interest in "deterring public officials' unlawful actions and compensating victims of such conduct." *Elder*, 510 U.S. at 515; *accord Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (same). Thus, the Supreme Court has cautioned that the need to protect government officials "do[es] not necessarily justify serious limitations upon 'the only realistic' remedy for the

14

violation of constitutional guarantees." *Crawford-El v. Britton*, 523 U.S. 574, 591 (1998).[3] As the Tenth Circuit has explained, straying from the Supreme Court's dictates by rejecting the robust-consensus standard would "skew[] the intended balance of holding public officials accountable while allowing them to perform their duties reasonably without fear of personal liability and harassing litigation." *Ullery v. Bradley*, 949 F.3d 1282, 1292 (10th Cir. 2020).[4]

In conducting this balancing, the Supreme Court has repeatedly *refused* to limit the scope of judicial authorities that clearly establish law. In *Elder*, for example, the Supreme Court reversed the Ninth Circuit's determination that a reviewing court was limited to considering the case law identified by a plaintiff, reasoning that nothing in its precedents limited "the authorities a court may consider in determining qualified immunity …." 510 U.S. at 515-16. And in *Lanier*,[5] the Supreme Court reversed the Sixth Circuit's determination that only Supreme Court precedent could

---

[3] Appellees assert that foreclosing constitutional remedies is appropriate because plaintiffs "can successfully pursue claims under state tort law." Br. at 47. But as the Supreme Court has recognized, "[u]nlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). Moreover, in this case, Ms. Gilmore did *not* have any adequate state tort remedies, as the District Court held Appellees were entitled to sovereign immunity on all her state law claims. *See Gilmore v. Milton*, No. 6:18-cv-115, 2020 WL 7249627, at *3–5 (S.D. Ga. Dec. 9, 2020).

[4] Appellees criticize *Ullery*'s reasoning but ignore this language. *Ullery* did not reference the difficulty of defeating qualified immunity absent the robust-consensus standard in the abstract, *contra* Br. at 46; rather, it noted that qualified immunity has two goals that the Supreme Court has carefully balanced.

[5] *Lanier* involved a criminal prosecution for deprivation of civil rights under 18 U.S.C. § 242, which this Court has recognized uses the same standards as civil liability under Section 1983. *United States v. Hill*, 99 F.4th 1289, 1300 (11th Cir. 2024).

clearly establish law, noting that "we have referred to decisions of the Court of Appeals when enquiring whether a right was 'clearly established.'" 520 U.S. at 269.[6] The rules the Supreme Court considered in *Elder* and *Lanier* would have served Appellees' preferred goals of simplicity, yet the Court rejected them because of their potentially significant impacts on meritorious civil rights claims.

### B.    Appellees Misunderstand the Relationship Between Circuits.

Appellees make both too much and too little of the nature of this Court's sister circuits, insisting both that opinions from other circuits are entitled to no more weight than district court opinions, unpublished opinions, or dicta, *see* Br. at 24–25, and that consideration of other circuits' decisions would somehow limit this Court's independent consideration of constitutional issues, *id.* at 27–28. Appellees are wrong on both fronts.

This Court treats opinions from its sister circuits as "persuasive authority," a designation which it has never used to describe district court opinions or dicta. *See, e.g.*, *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010). The reason for elevating sister circuit authority over other forms of non-binding authority is clear: "[t]o the extent that circuits can maintain uniformity with principled decisions,

---

[6] *Amici* Alabama and Florida offer no explanation why *Lanier*'s holding does not foreclose their argument that only decisions from the Supreme Court can clearly establish law. Amicus Br. at 9 n.1. The fact that the *Wesby* Court noted it had "not yet decided" what constitutes "controlling authority" says nothing about *Lanier*'s approval of considering circuit courts' approaches; indeed, *Wesby* itself reviewed circuit court decisions to determine "how a reasonable official 'could have interpreted' them." 583 U.S. at 66 n.8.

there is desirable predictability of the law and equal application throughout the country." *Martin v. Heckler*, 773 F.2d 1145, 1153 (11th Cir. 1985). This national policy makes good sense, ensuring that the scope of fundamental constitutional rights does not vary significantly between circuits.

Recognizing the robust-consensus standard serves this important interest, but in no way limits this Court's independent judgment: "when uniformity among the circuits collides with a fundamental precept … uniformity must yield." *United States v. Goodheim*, 651 F.2d 1294, 1298 (9th Cir. 1981), *abrogated on other grounds*, *Parke v. Raley*, 506 U.S. 20, 28 (1992). This Court remains free—and indeed obligated—to consider whether "the justification that [its] sister circuits offer[] for the consensus view is unpersuasive." *Laskar v. Hurd*, 972 F.3d 1278, 1294 (11th Cir. 2020). When this Court disagrees with its sister circuits about a constitutional rule, the robust-consensus standard would change nothing; a plaintiff would simply lose their claim on the merits. The robust-consensus standard would only defeat qualified immunity where this Court *agreed* with its sister circuits that a constitutional violation occurred—suggesting that officials are on notice because there is only one fair way to read relevant precedent.

Appellees also suggest that the robust-consensus standard is flawed because "an official could reasonably believe that out-of-circuit decisions were simply *wrong*." Br. at 29 (emphasis in original). But fair notice does not require an official's

17

agreement; courts have denied qualified immunity to public officials who unreasonably believed precedent was wrong. *See, e.g.*, *Ermold v. Davis*, 936 F.3d 429, 435-36 (6th Cir. 2019) (denying qualified immunity to official who refused to comply with Supreme Court decision because of her disagreement with the reasoning). Indeed, if this Court agrees that the out-of-circuit consensus is simply wrong, an official will win on the merits.

## C.    Appellees' "Workability" Concerns Ignore the Supreme Court's Rejection of Categorical Rules About Qualified Immunity.

Appellees next resist the robust-consensus standard as "hopelessly unworkable" because it is not easily susceptible to bright line rules. Br. at 30–32. But there are few, if any, bright line rules in any constitutional adjudication; many rights are "not capable of precise definition or mechanical application…." *McCullogh v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009). That is no less true for qualified immunity; "[t]he standard for determining whether a constitutional right [is] 'clearly established'" is simply whether the state officer had "'fair warning' that his conduct deprived his victim of a constitutional right." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). That inquiry "look[s] at the entire legal landscape at the time…." *Wesby*, 583 U.S. at 68; *accord Burgess v. Lowery*, 201 F.3d 942, 946 (7th Cir. 2000) (Posner, C.J.) (describing test as "whether a reasonable official in the position of these defendants, considering all relevant sources of guidance to the law, might have thought….that strip searches of prison visitors are proper even without reasonable

18

suspicion"). The robust consensus standard is part of this legal landscape: where the consensus shows that there is only one reasonable way to apply the relevant legal principles to a particular factual situation, that consensus defeats qualified immunity.

Because the inquiry turns on the clarity of the notice, the robust consensus standard cannot be reduced to simply "count[ing] noses." *Laskar*, 972 F.3d at 1294. Indeed, the Supreme Court has already rejected Appellees' argument that the lack of a bright-line rule about the role of other circuits' authority forecloses their consideration altogether. In *United States v. Lanier*, a Sixth Circuit panel affirmed a conviction under 18 U.S.C. § 242 notwithstanding the lack of any factually analogous Supreme Court or Sixth Circuit precedent, in part by pointing to convictions sustained by the Fifth and Seventh Circuits. 33 F.3d 639, 651-52 (6th Cir. 1994). The Sixth Circuit granted en banc review and reversed, rejecting the argument that those other circuits' opinions could provide fair notice. *United States v. Lanier*, 73 F.3d 1380 (6th Cir. 1996). After the Supreme Court granted certiorari, the defendant urged affirmance by arguing that officials could not be forced to consult "a comprehensive law library in order to ascertain what acts [are] prohibited." Br. of Resp't, *United States v. Lanier*, No. 95-1717, 1996 WL 528327, at *21 (U.S. Sept.10, 1996). The Supreme Court easily rejected that concern; while "disparate decisions in various Circuits might leave the law insufficiently certain even on a point widely considered, such a circumstance may be taken into account

19

in deciding whether the warning is fair enough, without any need for a categorical rule…." *Lanier*, 520 U.S. at 269. The Supreme Court has thus considered and rejected Defendants' complaint that the robust-consensus standard "fosters uncertain decision making as government officials are left to guess when and which non-binding opinions might apply to their conduct." Br. at 37.

The lack of a bright-line rule does not mean that no standards govern the inquiry. The number of circuits in agreement must be considered, alongside their reasoning. A small number of cases may suffice when the opinions are detailed and agree that the answer is clear; more decisions may be necessary where the opinions are less thorough. Factual congruence necessarily matters, as it does in every clearly-established-law inquiry. Whether a decision is published or unpublished should count less than the quality of its analysis—an unpublished decision may involve more cursory analysis, or it may convey the panel's decision that the legal question is obvious and does not warrant publication. The order of decisions likely matters in the absence of complete consensus: an old, outlier decision that is subsequently rejected by a consensus of authority may not unsettle the law, while a new decision rejecting a pre-existing consensus may. And the reviewing court must also consider the consensus in the context of the "entire legal landscape," including relevant-but-not-controlling decisions from the same circuit and the existence of any relevant regulations.

## IV.    A ROBUST CONSENSUS OF PERSUASIVE AUTHORITY CLEARLY ESTABLISHES THAT APPELLEES VIOLATED MS. GILMORE'S FOURTH AMENDMENT RIGHTS.

Although Appellees note potential challenges to determining whether a robust consensus exists such that a reasonable officer has fair notice, *see supra* Section III, this case presents no such challenges. Nine sister circuits unanimously required reasonable suspicion before subjecting prison visitors to strip searches less invasive than the search here, a requirement also imposed by this Court's analogous precedents and the prison's own regulations. Indeed, Appellees had such overwhelming notice "that both in their pleadings below and at oral argument before [the panel], [they] agreed that 'reasonable suspicion' is 'the correct standard'…." *Gilmore v. Ga. Dep't of Corr.*, 111 F. 4th 1118, 1141 n.2 (11th Cir 2024) (Newsom, J., concurring). Thus, this Court should "conclude that 'the law' gave the prison officials at Smith State Prison 'fair notice' that their suspicionless strip search of Clarissa Gilmore was unconstitutional." *Id.* at 1140-41.

### A.    Nine Unanimous Court Decisions Holding That Reasonable Suspicion Is Required to Conduct a Strip Search Create a Robust Consensus of Persuasive Authority.

As detailed in Plaintiff's opening brief, at the time of Ms. Gilmore's manual body cavity search, nine circuits had already decided that reasonable suspicion was required for a less invasive visual strip search. Appellant's Opening Br. ("AOB") at 25-36. This consensus reflects well-established legal principles that require

21

individualized suspicion for nearly all searches, recognize that strip searches are one of the greatest personal intrusions, and hold that Fourth Amendment protections still apply in prisons. *See* AOB at 27-28. The quantity and quality of these decisions create a robust consensus of persuasive authority that clearly establishes the law.

Rather than challenge each of these decisions on the merits, Appellees attempt to chip away at the margins: they assert that (1) two of those circuits adopted the reasonable suspicion standard in in dicta rather than a holding, and (2) a single inapposite state-court decision from 1978 undermines the consensus. Br. at 48-49. Neither argument succeeds.

Appellees first assert that two of the nine[7] circuit decisions that adopted a reasonable suspicion requirement, *Varrone v. Bilotti*, 123 F.3d 75 (2d Cir. 1997), and *Romo v. Champion*, 46 F.3d 1013 (10th Cir. 1995), do not support a robust consensus because the relevant portions of those decisions "are dicta." Br. at 48. But where a court identifies the governing legal rule and applies it to reach the opinion's result, the governing legal standard is part of the holding. *See supra*, Section I.B. This is what happened in both *Varrone* and *Romo*. In *Varrone*, the Second Circuit affirmed the standard that "a search of prison visitors without reasonable suspicion violated

---

[7] Appellees claim that "[o]nly seven of the nine circuit decisions [Plaintiff] cites" pre-date her strip search, Br. at 48, but this is incorrect. As explained in Plaintiff's opening brief, the Fourth and Ninth Circuits decided the issue in unpublished decisions before 2017, and decided them again in published decisions after 2017. *See* AOB at 26 & n.3. Appellees do not contend that this Court can or should disregard the pre-2017 decisions.

clearly established law." 123 F.3d at 78-79. It then applied the standard to determine that defendants had not violated plaintiff's clearly-established rights and reverse the decision below. *Id.* at 80-81. The Tenth Circuit did the same in *Romo*, applying the reasonable-suspicion standard to determine that defendants were entitled to qualified immunity, *see* 46 F.3d at 1020—a ruling that the Tenth Circuit itself later described as a holding. *See Mayfield v. Fields*, 85 F.3d 641 (10th Cir. 1996) ("We have held [in *Romo*] that prison officials may perform a strip search as a precondition for allowing an individual to visit an inmate if they have reasonable suspicion the individual is attempting to bring contraband into the facility.").

Appellees also argue that the existence of "at least one judicial decision cutting against the legal rule Gilmore asserts"— a 1978 Hawaii state supreme court decision—undermines the robust consensus of circuit court decisions. Br. at 5. But as explained in Plaintiff's opening brief, the decision in *State v. Martinez*, 580 P.2d 1282 (Haw. 1978), does no such thing. AOB at 35 n.11. *Martinez* hinged on the defendant's "consent to her search," noting that "the reasonableness of the search must be judged in light of that circumstance." 580 P.2d at 1286. Distinguishing *Martinez* because it involved a consensual search is hardly "factual nitpicking," Br. at 49; consent is an often-dispositive factor in Fourth Amendment litigation. And even if *Martinez* had been on point, no "reasonable official in the position of these defendants, considering all relevant sources of guidance to the law, might have

thought it reasonably possible that this court or eventually the U.S. Supreme Court would hold that strip searches of prison visitors are proper even without reasonable suspicion." *Burgess*, 201 F.3d at 946 (discussing *Martinez*). This is particularly true because *Martinez* was decided "at the very outset of the case development, so that one may doubt whether [it] would be followed by the Supreme Court of Hawaii today … decades later." *Id*. at 948.

### B.    The Robust Consensus Was Not Unsettled by *Powell* or *Florence*.

This Circuit's 2008 decision in *Powell* and the Supreme Court's 2012 decision in *Florence* did nothing to unsettle the post-*Bell* consensus that reasonable suspicion is required to strip search a prison visitor. *See Powell v. Barrett*, 541 F.3d 1298 (11th Cir. 2009); *Florence v. Bd. Chosen Freeholder of Cnty. of Burlington,* 566 U.S. 318 (2012). Appellees' claim that *Florence* created ambiguity that "allows a reasonable official to believe" that they could strip search prison visitors without reasonable suspicion, Br. at 53, should be rejected. *Florence*—like *Bell* and *Powell* before it— expressly limited its application to individuals with a markedly diminished right of privacy, who implicated heightened security concerns due to their placement in the general population of detention facilities, and the *Florence* Court went out of its way to emphasize that its ruling extended no further. *See* 556 U.S. at 338-39; *see also id.* at 340 (Alito, J., concurring) ("emphasiz[ing] the limits of today's holding") and *id.* (Roberts, C.J., concurring) (cautioning against reading majority too broadly "to

24

ensure that we 'not embarrass the future'") (citation omitted). That included an express statement that *Florence*'s holding did not cover searches involving "the touching of detainees." *Id.* at 339. Nothing about *Florence* would permit a "reasonable official" to believe that he could extend *Florence* to a prison visitor who was not joining the general population and touch the intimate parts of that person's body as part of a manual body cavity search. *See United States v. Touset*, 890 F.3d 1227, 1234 (11th Cir. 2018) (searches involving physical contact implicate far greater Fourth Amendment concerns than visual inspections).

Appellees argue that *Bell* and *Florence* are "vastly different," Br. at 52, such that a post-*Bell* consensus is "undermine[d]" by *Florence*, Br. at 51. But *Bell* and *Florence* are not different in a way that is relevant to this case. Both the convicted prisoners in general population in *Bell* and the arrestees in general population in *Florence* possessed limited privacy rights and posed the same dangers of introducing contraband to the whole institution. Prison visitors, by contrast, lack either feature. So while the distinction between *Bell* and *Florence* might be meaningful for other detainees, it is irrelevant for prison visitors like Ms. Gilmore.

Appellees also claim that *Florence* undermined three earlier decisions from Plaintiff's robust consensus because those decisions relied on pre-*Florence* cases requiring reasonable suspicion for arrestees. Br. at 52 (citing *Blackburn v. Snow*, 771 F.2d 556, 565 (1st Cir. 1985); *Varrone*, 123 F.3d at 79; *Thorne v. Jones*, 765 F.2d

1270, 1276 (5th Cir. 1985)). To the contrary, none of the cases cited by Appellees did anything beyond include a single case about arrestee strip searches in a string citation. *See Blackburn*, 771 F.2d at 565; *Varrone*, 123 F.3d at 79; *Thorne*, 765 F.2d at 1276. The arrestee cases are wholly inessential to their reasoning, and *Florence* has no effect on their continuing vitality.

### C.    Appellees Had Fair Notice That Their Behavior Was Unlawful.

The robust consensus discussed above is even more persuasive because it is consistent with analogous case law from this Court and the Georgia Department of Corrections regulations, which both underscored that reasonable suspicion is required to strip search a civilian. *See* AOB at 43-47 (describing analogous cases and prison regulations). Indeed, the law was so clear on this point that Appellees' counsel agreed that reasonable suspicion was the appropriate standard. *Gilmore*, 111 F. 4th at 1141 n.2 (Newsom, concurring). Appellees are silent on why they should be immunized for ignoring all these sources of law.

### **CONCLUSION**

The judgment of the District Court should be reversed.

Dated: January 2, 2025

Respectfully submitted,

Janai S. Nelson
*President & Director-Counsel*
Arielle Humphries
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor New York,
NY 10006
T: (212) 965-2200
F: (212) 226-7529

*Counsel for Plaintiff- Appellant*

*\*Counsel of Record*

*/s/ Christopher Kemmitt*
Christopher Kemmitt\*
NAACP LEGALDEFENSE
AND EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
T: (202) 682-1300
F: (202) 682-1312

Shania King
The Law Office of Shania King, LLC
1075 Peachtree St.
Atlanta, GA 30039

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6464 words as counted by the word-processing system used to prepare it.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

*/s/ Christopher Kemmitt*
*Counsel for Plaintiff-Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 2, 2025, I served a true and correct copy of the foregoing document via electronic notice by the CM/ECF system on all counsel or parties of record.

*/s/ Christopher Kemmitt*
*Counsel for Plaintiff-Appellant*